**Nathan G. Wagner**
SIEFERT & WAGNER, PLLC
1135 Strand Avenue, Suite A
Missoula, Montana 59801
Telephone:  406-226-2552
Facsimile:   406-226-2553
E-Mail:       nate@swl.legal; mail@swl.legal

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| HAROLD ELKE,<br><br>Plaintiff,<br><br>v.<br><br>COLLEEN BRIDGET LARSON, ANDREW SEKORA, AND JOHN DOES 1-3,<br><br>Defendants. | Cause No.<br><br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Harold Elke (hereinafter "Plaintiff," or "Elke"), complains and alleges against Defendants, Colleen Bridget Larson ("Larson"), and Andrew Sekora ("Sekora"), as follows:

### PARTIES

1. Elke is a Canadian citizen residing in Canada and is the former romantic partner of Larson.

2. Larson is a United States citizen residing in Flathead County, Montana, and

1

is the former romantic partner of Elke.

3.  Sekora is a United States citizen residing in Lewis & Clark County, Montana, and is the son-in-law of Larson.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(2) because this action is between citizens of Montana and a citizen of a foreign country.

5.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Larson resides in the Missoula Division of the District of Montana, and all defendants reside in Montana.

## ALLEGATIONS COMMON TO ALL COUNTS

6.  Prior to 2019, Elke and Larson began a romantic relationship with one another. Elke was previously divorced and was set to retire from his dental practice, and Larson was recently divorced.

7.  Elke provided Larson with various forms of financial support, including gifts of cash in excess of $50,000 to help her start a new life after her divorce, help with Larson's family's medical expenses, and other financial gifts. Elke does not seek the return of those gifts, which he acknowledges were freely given by him.

8.  In the fall of 2018, Elke took Larson overseas to celebrate his 65th birthday, at which time he proposed to marry her, and offered her a custom-made engagement ring.

9.  In the spring of 2019, Elke discussed with Larson the need for a prenuptial agreement. Larson became indignant at the idea that Elke would desire to protect his finances from her and refused to discuss the matter with Elke.

10. On a number of occasions in 2019, Elke attempted to revisit the issue of the prenuptial agreement, but Larson refused to discuss it and became upset when Elke brought it up.

11. In the fall of 2019, Elke and Larson became aware of an opportunity to buy a condo ("the Property") for $335,000 located at 134 Miles Avenue in Whitefish, Montana, which is legally described as:

> Riverbend Homes Condo Blk 40 Whitefish, Section 36, Township 31 North, Range 22 West, Unit 134, 10% Common Area Interest, Assr # 0000974212.

12. Elke had discussions with Larson and Sekora regarding the possible tax ramifications associated with Elke's ownership of the Property given his status as a Canadian citizen.

13. Larson and Sekora indicated that Elke could avoid having to pay Canadian taxes when the Property was eventually sold if they were to purchase the Property solely in Larson's name with the understanding that Elke would be a 50% owner of the Property.

14. Larson and Sekora also indicated that it would be beneficial to Larson if Elke were to designate the funds as a "gift," to her so that she would not have to pay taxes

3

on the money.

15. Elke relied on his belief that he would eventually be married to Larson, and on his belief that her son-in-law Sekora would not mislead him, when he decided to follow their recommendation and advance the funds to Larson to purchase the Property in her name.

16. Larson and Sekora convinced Elke to allow Larson to acquire the Property solely in her name rather than Larson and Elke acquiring the Property jointly because there were "tax advantages," to doing so.

17. Elke relied on his relationship with Larson, and on the advice of her son-in-law, Sekora, who worked for an accounting firm, when they suggested that there were "tax advantages," to acquiring the Property solely in Larson's name rather than jointly with Larson and Elke as the owners.

18. Sekora and Larson also recommended that Elke should characterize the transfers as "gifts," to Larson, and that there were "tax advantages," for this as well.

19. Elke relied on Sekora and Larson's representation that there were "tax advantages" for characterizing the funds as a "gift" to Larson rather than as a joint investment into the Property.

20. Elke agreed to purchase the Property with Larson using $20,000 of Elke's funds for the earnest money, and then an additional $100,000 of Elke's funds as a down payment. Larson agreed to use $120,000 of her money as a down payment as

well. The remaining $95,000 was financed through a lender.

21. In July of 2020, Elke advanced $20,000 to Larson to use as an earnest money deposit on the Property.

22. The transaction was delayed, and then in March of 2021, Elke advanced an additional $100,000 to Larson as the down payment for the purchase of the Property.

23. Larson then used Elke's $120,000 investment along with her own $120,000 investment, along with $95,000 of financing, to acquire the Property solely in her name.

24. In June of 2022, Elke and Larson received notice from the condo association that they were required to spend $20,000 on upgrades to the exterior of the Property. Elke and Larson agreed to share this expense 50/50, and Elke then invested an additional $10,000 to repair the exterior of the condo on the Property.

25. Elke and Larson continued to be involved romantically throughout 2021, 2022, and into the fall of 2023 when their relationship ended.

26. After their relationship ended, Elke requested that Larson buy out his interest in the Property.

27. As a gesture of goodwill, Elke offered to allow Larson to buy Elke out for only $120,000 rather than for 50% of the equity in the Property to which he was entitled.

28. On December 11, 2023, counsel for Larson wrote to Elke and stated that

Larson's position was that Elke's investment into the Property was actually an irrevocable gift to Larson, and that it would not be returned.

29.     Larson's counsel offered that if the property were to be sold within 15 years, then Larson would pay Elke $120,000 from the sale proceeds.

30.     Elke rejected this proposal because his investments were not gifts, and Elke claims an ownership interest in the Property by virtue of his investment.

## COUNT I--FRAUD
### Defendants Larson and Sekora

31.     Elke alleges the preceding paragraphs.

32.     Larson and Sekora engaged in fraud by representing to Elke that there were tax advantages to characterizing his investment into the Property as a "gift" and acquiring the Property solely in Larson's name rather than a joint investment between Elke and Larson.

33.     These representations were false because there were no tax advantages for Elke to characterize his investment in the Property as a "gift," or to allow Larson to purchase the Property solely in her name rather than purchasing the Property jointly with Elke. Any supposed tax advantages to Elke were far offset by the risk that, as has happened here, Larson would later claim that the Property was solely hers and that Elke had no interest in the Property he had helped to purchase.

34.     These representations were material because Elke made his decisions to advance the funds to Larson and allow her to purchase the Property solely in her

6

name without any security for Elke, and to refer to the funds as a "gift," based on these representations.

35. Larson and Sekora knew that these representations were false because there was no "tax advantage," for Elke to allow Larson to use Elke's money to acquire the Property solely in Larson's name, or for Elke to characterize his investment into the Property as a "gift." Larson and Sekora knew that any supposed tax advantages to this arrangement were far outweighed by the risk Elke incurred that Larson would do as she has now done, and claim that the Property is solely hers, and that Elke owns no interest in the Property.

36. When Larson and Sekora made these representations, they did so with the intent that Elke would rely upon these representations by advancing funds to Larson to use to acquire the Property solely in her name, and with the intent that Elke would characterize the advances of funds as a "gift" so that they could later claim Elke had no interest in the Property.

37. Elke was not aware that these representations were false and that, in reality, any supposed tax advantage for him would be far outweighed by the risk that Larson would claim the Property as her own and refuse to acknowledge his interest in the Property.

38. When Elke advanced the funds, referred to them as a "gift," and allowed Larson to purchase the Property solely in her name using his money, Elke relied on

7

Larson and Sekora's representations regarding the supposed tax advantages of the arrangement.

39. Elke has a right to rely on the representations of his romantic partner, Larson, and her accountant son-in-law, Sekora, because Elke had no idea that they did not have his best interests in mind and that they were actually scheming to defraud him of his investment in the Property.

40. Elke has suffered consequent and proximate harm as a result of his reliance on these representations because he stands to lose his 50% share of the equity of the Property due to his agreement to allow Larson to purchase the Property solely in her name, and his agreement to refer to the investment as a "gift."

41. Elke is entitled to an award of damages for fraud against Larson and Sekora in the amount of 50% of the equity in the Property.

42. Alternatively, Elke is entitled to an order requiring Larson to convey title to the Property from Larson to Elke and Larson as tenants in common so as to ensure that Elke receives the benefit of the agreement he was fraudulently induced into entering.

## COUNT II--DECEIT
**Defendants Larson and Sekora**

43. Elke alleges the preceding paragraphs.

44. Under Mont. Code Ann. § 27-1-712(1), one who willfully deceives another with intent to induce that person to alter the person's position to the person's injury

or risk is liable for any damage the person suffers.

45. Deceit is defined as the suggestion as a fact of that which is not true by one who does not believe it to be true; the assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true; the suppression of a fact by one who is bound to disclose it or who gives information of other facts that are likely to mislead for want of communication of that fact; or a promise made without any intention of performing it.  Mont. Code Ann. § 27-1-712(2).

46. Larson and Sekora engaged in deceit by suggesting that Elke would benefit from "tax advantages," if he allowed Larson to use his money to purchase the Property solely in her name, and if he referred to the funds he was advancing as a "gift," when they either knew this was false or had no reasonable basis to believe it was true.

47. Larson and Sekora engaged in deceit by suppressing the truth regarding the supposed tax advantages Elke would gain, and by causing Elke to be misled into believing that his investment would be safe if he allowed Larson to use it to buy the Property solely in her name.

48. Larson and Sekora engaged in deceit by promising that if Elke advanced the funds to Larson and referred to them as a gift, Larson would purchase the Property for Elke and Larson, which Larson and Sekora never intended to do.

49. Elke is entitled to an award of damages in the amount of 50% of the equity in

the Property due to Larson and Sekora's deceit.

50. Alternatively, Elke is entitled to an order requiring Larson to convey title to the Property from Larson to Elke and Larson as tenants in common so as to ensure that Elke receives the benefit of the agreement he was deceived into entering.

### COUNT III--UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST
### Defendant Larson

51. Elke alleges the preceding paragraphs.

52. Under Mont. Code Ann. § 72-38-123, a constructive trust arises when a person holding title to property is subject to an equitable duty to convey it to another on the ground that the person holding title would be unjustly enriched if the title holder were permitted to retain title.

53. Due to the fraudulent and deceptive actions described above, Larson is under an equitable duty to convey title to the Property from Larson solely to Larson and Elke as tenants in common.

54. Elke conferred a benefit upon Larson by providing her with $120,000 for the purchase of the Property, and by paying $10,000 for the upkeep of the Property.

55. Larson has knowledge of the benefit she has received because she is presently the sole owner of record of the Property that she purchased using Elke's funds.

56. Under the circumstances described above, it would be inequitable for Larson to retain the benefit of Elke's funds.

57.  Elke is entitled to an order requiring Larson to convey title to the Property to Larson and Elke as tenants in common.

### COUNT IV--PROMISSORY ESTOPPEL
### Defendant Larson

58.  Elke alleges the preceding paragraphs.

59.  Under Montana law, promissory estoppel arises where there is: (1) a promise clear and unambiguous in its terms; (2) reliance on the promise by the party to whom the promise is made; (3) reasonableness and foreseeability of the reliance; and (4) the party asserting the reliance must be injured by the reliance.

60.  As alleged above, Larson promised Elke that he could invest in the Property with her by advancing $120,000 which she would use to acquire the Property. Larson promised Elke's investment would be safe even though Larson was going to use his money to purchase the Property solely in her name, and even though they would refer to Elke's advance of funds as a "gift," so as to gain tax advantages.

61.  Elke relied on this promise by advancing $120,000 to Elke and allowing her to use his money to purchase the Property solely in her name.

62.  It was foreseeable that Elke would reasonably rely on the promise made to him by his romantic partner and make the decision to advance the funds to her with no security to ensure that his investment would remain safe.

63.  Elke has been damaged by his reliance on Larson's promise because Elke has no security for his investment and stands to lose 50% of the equity of the Property

11

he purchased with Larson.

64. Elke is entitled to require Larson to convey title to the Property to Elke as a tenant in common with Larson.

65. Alternatively, Elke is entitled to an award of damages in the amount of 50% of the equity of the Property.

## COUNT V--EQUITABLE ESTOPPEL
### Defendant Larson

66. Elke alleges the preceding paragraphs.

67. The conduct, acts, and failure to tell the truth described above, amounts to a representation or concealment of material facts regarding Larson's plan to purchase the Property using Elke's funds.

68. Larson was aware that she intended to use Elke's funds to purchase the property solely in her name so as to cause Elke's investment in the Property to be unsecured.

69. Elke was unaware of Larson's intent to lull him into making the unsecured investment into the Property.

70. Larson intended or expected that Elke would rely upon her statements and her failure to tell the truth.

71. Elke relied upon Larson's statements and her failure to tell the truth about her intentions when he agreed to give her the funds to purchase the Property in her name.

72. Elke's reliance upon Larson's statements, and her failure to tell Elke the truth,

12

caused him to change his position for the worse because he advanced $120,000 to purchase the Property and $10,000 to maintain the Property and he has no security interest in the Property.

73. Elke is entitled to require Larson to convey title to the Property to Elke as a tenant in common with Larson.

74. Alternatively, Elke is entitled to an award of damages in the amount of 50% of the equity of the Property.

### COUNT VI--INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Defendants Larson and Sekora

75. Elke alleges the preceding paragraphs.

76. The conduct of Larson and Sekora described herein constitutes circumstances where serious or severe emotional distress to Elke was the reasonably foreseeable result of their actions.

77. Elke is entitled to an award of compensatory damages for the emotional harm he suffered as a result of Larson and Sekora's fraudulent and deceptive actions and their broken promises.

WHEREFORE, Elke requests the following relief:

A. An award of compensatory damages;

B. An order requiring Larson to convey title in the Property to Elke and Larson as tenants in common;

C. Imposition of a constructive trust over the Property; and

D.     Such further relief as the Court deems equitable.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues appropriate for jury trial.

Respectfully submitted this 23rd day of August, 2024.

                 SIEFERT & WAGNER, PLLC

                 By: /s/ Nathan G. Wagner
                      Nathan G. Wagner
                      *Attorney for Plaintiff*